**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JORGE GUERRA VAZQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-2212-K |
| | § | |
| JOSEPH B. EDLOW, Director of United States Citizenship and Immigration Services, in his official capacity, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Joseph B. Edlow's ("Defendant") Motion to Dismiss (the "Motion") (Doc. No. 28), Plaintiff Jorge Guerra Vazquez's ("Plaintiff") Response in Opposition to Defendant's Motion (the "Response") (Doc. No. 32), and Defendant's Reply in Support of the Motion (the "Reply") (Doc. No. 34). The Court has carefully considered the Motion, the Response, and the Reply, as well as Plaintiff's First Amended Complaint for Declaratory and Related Relief (the "Amended Complaint") (Doc. No. 27), the supporting appendices, the applicable law, and the relevant portions of the record. For the following reasons, the Court **GRANTS** the Motion, **DISMISSES WITH PREJUDICE** Counts I, II, and III of the Amended Complaint, and **DISMISSES AS MOOT** Count IV of the Amended Complaint.

## I. Factual Background

Plaintiff Jorge Guerra Vazquez (also spelled "Vasquez") was born on September

13, 1972, in Mexico. Doc. No. 27 at 7, ¶ 24. Plaintiff's father, Antonio Guerra Rodriguez ("Antonio") was born on June 13, 1944, also in Mexico. *Id.* at ¶ 25. Antonio's mother and Plaintiff's grandmother, Cruz Rodriguez de Guerra ("Cruz") was born on February 28, 1924, in Kansas. *Id.* at ¶ 26. Plaintiff also has a son, Jorge Antonio Guerra Quezada ("Quezada"). *Id.* at 9, ¶ 35. Plaintiff is currently a lawful permanent resident living in Texas. *Id.* at 3, ¶ 7.

In August of 2021, Plaintiff filed a Form N-600 application with United States Citizenship and Immigration Services ("USCIS"), requesting that USCIS "issue a certificate of citizenship, thus formally recognizing [Plaintiff] as a United States citizen based on his claim of having acquired citizenship at birth through his father, [Antonio][.]" *Id.* at 8, ¶ 31. Specifically, Plaintiff claims that "he acquired United States citizenship at birth through his father, [Antonio], who in turn acquired United States citizenship through his mother, [Cruz]." *Id.* at 5, ¶ 17. In November of 2021, USCIS notified Plaintiff that it had approved Plaintiff's Form N-600 application and that he was to appear for his oath ceremony on December 2, 2021, where USCIS would issue him his certificate of citizenship. *Id.* at 9, ¶ 34. However, on December 22, 2021, USCIS notified Plaintiff that it intended to cancel his certificate of citizenship on the basis that Plaintiff is not a U.S. citizen. *See id.* at 9, ¶ 36; *see also* Doc. No. 1-12 (USCIS Notice of Intent to Cancel Certificate of Citizenship). Subsequently, on November 20, 2024, USCIS formally revoked Plaintiff's certificate of citizenship. *Id.* at 10, ¶ 39.

Plaintiff filed this case in federal court, seeking "a judgment from this Court

formally declaring once and for all that he is a United States citizen so that his citizenship status in this country can no longer be called into question." *Id.* at 10, ¶ 37. Specifically, Plaintiff brings claims for (1) a declaration of his U.S. citizenship pursuant to 8 U.S.C. § 1503 ("Section 1503"); (2) preliminary and permanent injunctive relief pursuant to the Administrative Procedure Act (the "APA"), requesting that the Court "enjoin[] Defendant from further refusing to acknowledge Plaintiff's [] citizenship"; (3) a violation of Plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution; and (4) a violation of his procedural due process rights under the Fifth Amendment to the United States Constitution. *Id.* at 13–18, ¶¶ 51–72.

Subsequent to the filing of this case, Plaintiff and Defendant filed their Joint Motion to Stay (Doc. No. 19), asking that the Court stay this case until USCIS fully adjudicated Plaintiff's Form I-290B, which appealed USCIS's decision to cancel Plaintiff's certificate of citizenship. *See* Doc. No. 19 at 1–2; Doc. No. 27 at 12, ¶¶ 45–47. On April 24, 2025, the Administrative Appeals Office formally denied Plaintiff's appeal and affirmed the cancellation of his certificate of citizenship. Doc. No. 27 at 12, ¶ 46. As a result, Plaintiff fully exhausted his administrative remedies. Thereafter, Plaintiff filed his Amended Complaint (Doc. No. 27).

Now, Defendant brings the present Motion, seeking dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed his Response and Defendant filed his Reply. Accordingly, the Motion is now ripe for determination.

## II. Legal Standards

### A. Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). The court must presume all well-pleaded facts in the complaint to be true and it must resolve all ambiguities or doubts regarding the sufficiency of the claims in plaintiff's favor. *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (although the court must take as true all of the factual allegations in the complaint, it is not bound to accept as true a legal conclusion couched as a factual allegation). In reviewing a motion to dismiss under Rule 12(b)(6), the court may only consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Kane Enters.*, 322 F.3d at 374 (plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim). If a plaintiff pleads facts which allow the court to reasonably infer that

the defendant is liable for the alleged misconduct, the claim is facially plausible. *See Twombly*, 550 U.S. at 570. While facial plausibility is not a "probability requirement," it mandates "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 556 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). In other words, the alleged facts must nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**B. Subject-Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Absent power authorized by Constitution or statute, federal courts "lack power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Importantly, "courts [] have an *independent obligation* to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (emphasis added) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the

complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *In re FEMA*, 668 F.3d at 287. "It is incumbent on all federal courts to dismiss an action whenever it appears that subject-matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Ultimately, the party seeking the federal forum bears the burden of showing that jurisdiction is proper. *Id.*

## III. Analysis

Defendant moves to dismiss all of Plaintiff's claims against it, arguing that "[Plaintiff's] claim to have received U.S. citizenship from his father fails as a matter of law." Doc. No. 28 at 1. In his Response, Plaintiff advances numerous arguments, including that Defendant acted improperly when USCIS cancelled Plaintiff's certificate of citizenship and that Defendant is "barred from repudiating its prior adjudication" of Plaintiff's citizenship. *See* Doc. No. 32 at 13–20. In his Reply, Defendant directs the Court to two prior cases in this District involving Plaintiff's family members. *See* Doc. No. 34 at 2. Defendant argues that these cases involve "similarly dismissed complaints by other family members of [Plaintiff] at the Rule 12 stage, based on similar analyses about what the pleadings showed about the parties' alleged acquisition of U.S. citizenship at birth." *Id.*

For the following reasons, the Court finds that (1) it lacks subject-matter jurisdiction over Plaintiff's claims for injunctive relief (Count II) and for violation of his substantive due process rights (Count III), and (2) even if the Court had subject-

matter jurisdiction over Counts II and III, Plaintiff fails to state a claim for relief as to Counts I, II, and III because he did not acquire U.S. citizenship at birth. Further, because Plaintiff timely filed this case within the applicable limitations period, the Court finds that Plaintiff's claim for violation of his procedural due process rights (Count IV) is moot.

### A. Lack of Subject-Matter Jurisdiction (Counts II & III)

Plaintiff seeks a "declaration that he is a citizen of the United States" pursuant to 8 U.S.C. § 1503(a). Doc. No. 27 at 2, ¶ 3. Section 1503(a) provides that, "[i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . against the head of such department or independent agency for a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a) (citation modified). Put another way, Congress enacted Section 1503(a) to provide redress for when "a person within the United States is denied a . . . right of citizenship, on the ground that he is not a national of the United States." *Cambranis v. Blinken*, 994 F.3d 457, 465 (5th Cir. 2021) (citation modified). Importantly, Section 1503(a) is the "*exclusive remedy* for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national." *Id.* at 466 (emphasis added). Plaintiff indisputably seeks relief under

Section 1503(a).

The Court finds that it lacks subject-matter jurisdiction over Count II and Count III of Plaintiff's Amended Complaint because Section 1503(a) provides the adequate and exclusive remedy for those claims.

**1. Count II (Injunctive Relief)**

Plaintiff seeks injunctive relief in Count II pursuant to the APA, requesting that the Court enjoin Defendant from further denying Plaintiff's alleged U.S. citizenship. *See* Doc. No. 27 at 14, ¶ 57. Section 702 of the APA states that a person is "entitled to judicial review" of an agency action if such action "adversely affected or aggrieved" that person. 5 U.S.C. § 702. However, Section 704 of the APA states that only such agency actions "for which there is no *adequate* remedy at law" are subject to judicial review under the APA. *Id.* at § 704 (emphasis added). The Fifth Circuit has made clear that Section 1503(a) is an "adequate alternative remedy" for claimants who are denied a right or privilege of citizenship on grounds that they are not U.S. citizens. *See Flores v. Pompeo*, 936 F.3d 273, 277 (5th Cir. 2019); *see also Cortez v. Rubio*, 176 F.4th 373, 379 (5th Cir. 2026) (finding APA claim based on denial of passport application "jurisdictionally barred because Section 1503(a) provides an adequate remedy at law").

The agency action Plaintiff challenges is Defendant's cancellation of his certificate of citizenship based on the determination that Plaintiff is not a U.S. citizen. *See* Doc. No. 27 at 1, ¶ 1; Doc. No. 1-12. This is precisely the situation Section 1503(a) was designed to address. *See* 8 U.S.C. § 1503(a) (person may institute action if denied

a "right or privilege as" a U.S. citizen on grounds that he is *not* a U.S. citizen); *see also Hinojosa v. Horn*, 896 F.3d 305, 312 (5th Cir. 2018) (plaintiffs had, "in other words, been denied 'a right or privilege . . . upon the ground that [they are] not . . . national[s] of the United States'"). Therefore, Section 1503(a) expressly provides an adequate remedy for Plaintiff's claim for injunctive relief under the APA, wherein he asks the Court to enjoin Defendant "from further refusing to acknowledge" his U.S. citizenship. Doc. No. 27 at 14, ¶ 57. More than that, Section 1503(a) provides the **exclusive** remedy for Plaintiff's claim. *Cambranis*, 994 F.3d at 466 (emphasis added). Because Section 1503(a) provides the adequate and exclusive remedy for Plaintiff's alleged injury, the Court lacks jurisdiction over his claim for injunctive relief pursuant to the APA and, accordingly, dismisses Count II for that reason. *See Hinojosa*, 896 F.3d at 312 (Section 1503(a) adequate because it "provides a direct and guaranteed path to judicial review"); *Rangel v. United States*, Civ. Action No. 4:22-CV-0553, 2023 WL 2170800, at *8 (S.D. Tex. Feb. 21, 2023), *report and recommendation adopted by* 2023 WL 4878877 (S.D. Tex. Mar. 14, 2023) (Section 1503(a) provided remedy for denial of passport application on grounds that plaintiff did not establish U.S. citizenship).

**2. Count III (Substantive Due Process)**

Plaintiff also alleges a violation of his substantive due process rights under the Fifth and Fourteenth Amendments. Doc. No. 27 at 16–17, ¶¶ 64–68. Specifically, Plaintiff alleges that "Defendant has adversely affected and aggrieved Plaintiff by violating Plaintiff's right (or freedom) to travel internationally[.]" *Id.* at 16, ¶ 65.

The Court finds that it also lacks subject-matter jurisdiction over Plaintiff's substantive due process claim. "Section 1503(a) is a precisely drawn, detailed statute that sets out a remedial scheme for persons within the United States who are denied a privilege of citizenship, which suggests Congress intended it to *preempt more general remedies*." *Cambranis*, 994 F.3d at 465 (emphasis added). Section 1503(a) is the exclusive remedy for persons seeking a declaration of U.S citizenship after being denied a right or privilege of citizenship on grounds that they are not U.S. citizens. *Id.* at 466; *see also Rangel*, 2023 WL 2170800, at *10 ("Congress has prescribed an exclusive remedy for Rangel's complaints by enacting § 1503(a), which does not authorize Rangel's other requested relief"); *Tankoano v. USCIS*, 652 F. Supp. 3d 812, 816 (S.D. Tex. 2023) ("[1503(a)] is the proper vehicle to review denial of Tankoano's citizenship claim"). Addressing Plaintiff's claim to U.S. citizenship under any authority outside of Section 1503(a) would go around Congress's intent and "'sidestep[]' [1503(a)'s] limitation," which "would thwart the 'precisely drawn . . . remedial scheme' that Congress provided when enacting § 1503(a)." *Rangel*, 2023 WL 2170800, at *10 (quoting *Cambranis*, 994 F.3d at 465). Further, Congress provided Plaintiff a cause of action under Section 1503(a), which "precludes finding an implied private right of action under the Constitution." *Cortez*, 176 F.4th at 380 (quoting *Tankoano*, 652 F. Supp. 3d at 816).

Accordingly, the Court finds that it also lacks subject-matter jurisdiction over Plaintiff's substantive due process claim and dismisses Count III for that reason.

**B. Plaintiff's Claim of U.S. Citizenship (Counts I, II, & III)**

Notwithstanding the jurisdictional issues discussed by the Court herein, Plaintiff's claims for injunctive relief under the APA (Count II), violation of his substantive due process rights (Count III), and his request for a declaration of U.S. citizenship (Count I) all depend on Plaintiff actually having acquired U.S. citizenship at birth. *See* Doc. No. 27 at 13, ¶ 52 ("Plaintiff requests that the Court issue a declaratory judgment formally recognizing Plaintiff as a United States [c]itizen for all purposes"); 14, ¶ 57 ("Plaintiff requests that the Court issue a permanent injunction, enjoining Defendant from further refusing to acknowledge Plaintiff's United States [c]itizenship going forward"); 16, ¶ 67 ("Defendant's refusal to acknowledge Plaintiff's status as a United States citizen . . . calls into question[] Plaintiff's ability to travel abroad without fear of being stranded in a foreign country"). Plaintiff alleges that he acquired U.S. citizenship at birth through his father, Antonio. *See id.* at 5, ¶ 17. Specifically, Plaintiff alleges that he "acquired United States citizenship at birth through his father, [Antonio], who in turn acquired United States citizenship through his mother, [Cruz]." *Id.* He also alleges that he acquired U.S. citizenship through his father through "constructive presence." *Id.* at 9, ¶ 33.

As already noted, Plaintiff's claims turn on whether he acquired U.S. citizenship at birth. However, other cases in this District involving Plaintiff's son and brother have already resolved this issue. *See Quezada v. U.S. et al.*, Civ. Action No. 3:24-CV-564-L, 2025 WL 747263 (N.D. Tex. Jan. 29, 2025) (Toliver, M.J.), *report and recommendation*

*adopted by* 2025 WL 496572 (N.D. Tex. Feb. 14, 2025) (Lindsay, J.); *Vasquez v. U.S.*, Civ. Action No. 3:24-CV-0629-S, 2025 WL 847882 (N.D. Tex. Mar. 18, 2025) (Scholer, J.). The Court finds the analysis of the other courts persuasive and, therefore, finds that Plaintiff is *not* a U.S. citizen. So, even if the Court had subject-matter jurisdiction over Plaintiff's APA-based claim and substantive due process claim, those claims, along with Plaintiff's request for declaratory relief, fail to state plausible claims for relief. Accordingly, the Court **DISMISSES WITH PREJUDICE** Count I, Count II, and Count III.

#### 1. Plaintiff's Son (*Quezada v. U.S. et al.*)

Jorge Antonio Guerra Quezada ("Quezada"), Plaintiff's son, was born in Mexico in 1993 but was admitted to the United States as a lawful permanent resident in 2005. *Quezada*, 2025 WL 747263, at *1. In January of 2021, Quezada was convicted in Texas state court of online solicitation of minor sexual conduct. *Id.* After his conviction, the Department of Homeland Security initiated removal proceedings against Quezada, to which he later conceded. *Id.* However, prior to his removal to Mexico in 2021, Quezada alleged that he acquired U.S. citizenship at birth. *See id.* The court also summarized Plaintiff's Form N-600 application process, much like the Court has done herein. *See id.* at *2. Quezada brought his case against the federal government, alleging, among other things, that the government "wrongfully detained and deported him" even though he is a U.S. citizen. *Id.* Central to Quezada's claims was whether he acquired U.S. citizenship through his father, Plaintiff in the present case. *See id.* at *2, *3–4.

The *Quezada* court analyzed Quezada's claim to citizenship by examining "his lineage and the family members through which he claims he acquired citizenship." *Id.* at *4. Quezada, like Plaintiff here, only alleges citizenship through his paternal side. *See id.* "The applicable law for transmitting citizenship to a child born abroad when one parent is a citizen is the statute *in effect at the time of the child's birth*, which in Quezada's case was the statute in effect in 1993. *See id.*; *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013) (emphasis added). The *Quezada* court referenced the statute (8 U.S.C. § 1401(g)) in effect at the time of Quezada's birth, which provided that "'a person born outside of the geographical limits of the United States' acquired U.S. citizenship at birth if they were born: 'of parents one of whom is an alien, and the other a citizen of the United States who, *prior to* the birth of such person, was *physically present* in the United States or its outlying possessions for a period or periods totaling not less than five years[.]'" *Quezada*, 2025 WL 747263, at *4 (emphasis added) (quoting 8 U.S.C. § 1401(g) (codifying § 301(g) of the INA, as amended in 1986)).

The *Quezada* court found that Quezada's grandfather, Antonio (Plaintiff's father), was born to Cruz (Quezada's great-grandmother and Plaintiff's grandmother) out of wedlock, and that, under the relevant statute in effect at the time of Antonio's birth (in 1944), Antonio may have been a U.S. citizen. *See id.* at *4–5. However, the Court further found that, even if Antonio was a U.S. citizen, Quezada's father (the present Plaintiff) did **not** acquire U.S. citizenship at birth through his father, Antonio. *Id.* at *5 (emphasis added). Specifically, the court properly looked to the statute in

effect at the time of the present Plaintiff's birth in 1972 (the same statute in effect at Quezada's birth), which required Antonio's physical presence in the United States for at least five years prior to Plaintiff's birth in order for Antonio's citizenship (if he was a citizen) to pass to Plaintiff. *Id.* The court also looked to an affidavit submitted by Antonio, which appears to be the same affidavit submitted in the case presently before the Court (Doc. No. 1-5). *Id.* In that affidavit, Antonio stated that "he and his father went to live with his uncles in California in the early 1970s." *Id.* The court found that, "because [Antonio] began residing in the United States no earlier than 1970, and [Plaintiff] was born in 1972, [Antonio] could not have been physically present in the United States for at least five years before [Plaintiff] was born." *Id.* Accordingly, the court found that Plaintiff (Quezada's father) did not satisfy the statutory requirements in effect at the time of his birth and thus is *not* a U.S. citizen. *See id.* (emphasis added). As a result, Quezada was not a U.S. citizen either. *Id.*

The Court finds the reasoning of the *Quezada* court persuasive and, thus, adopts its reasoning related to the issue of Plaintiff's citizenship.

**2. Plaintiff's Brother (*Vasquez v. U.S. et al.*)**

Plaintiff's brother, Manuel Salvador Guerra Vasquez ("Manuel"), was born in Mexico in 1962. *Vasquez*, 2025 WL 847882, at *1; *see also* Doc. No. 1-5 at 1 (Plaintiff's father stating that his "first son, Manuel Salvador Guerra Vazquez, was born on June 21, 1962"). In 1995, Manuel first entered the United States on a nonimmigrant B2 visa. *Vasquez*, 2025 WL 847882, at *1. Subsequently, Manuel illegally entered and re-

entered the United States and faced criminal charges for his re-entry. *See id.* After his conviction on those charges, he was deported to Mexico. *Id.* After his deportation, he again re-entered the United States. *Id.* at *2. In the *Vasquez* case, Manuel alleged that "he was unlawfully detained and removed from the United States in 2007 and 2008, even though he allegedly is a United States citizen." *Id.* at *1. Much like Plaintiff in the present case, Manuel also sought "a declaration that he is a United States citizen and an injunction preventing Defendants from refusing to acknowledge his citizenship." *Id.* at *2.

The *Vasquez* court found that Manuel is also not a U.S. citizen, in part for the same reasons articulated by the *Quezada* court in finding that Plaintiff is not a U.S. citizen. *See id.* at *3 ("[Manuel] concedes that his father [Antonio] 'liv[ed] in Mexico from approximately 1944 to 1972.' Therefore, [Antonio] could not have been physically present in the United States for the requisite ten-year period"). However, the *Vasquez* court also addressed Manuel's "constructive presence" argument, which Plaintiff also advances in the present case. Here, like his brother, Plaintiff argues that his grandmother, Cruz (a natural-born U.S. citizen), "repeatedly attempted to assert her U.S. citizenship at the border but was turned away by immigration officers claiming she had 'abandoned her residence.'" Doc. No. 32 at 16. Therefore, according to Plaintiff, these facts "easily support an argument that for purposes of transmission of citizenship, Cruz's residence should be treated as continuing in the United States despite the government's own unlawful refusal to admit her." *Id.* As a result, Plaintiff

seems to argue that Cruz's "constructive presence" somehow means that Antonio was also "constructively present" long enough prior to Plaintiff's birth to pass his citizenship to Plaintiff. *See Vasquez*, 2025 WL 847882, at *4; Doc. No. 1-5 at 4 ("[a]t the very least, I know that my mother [Cruz] would have filed the appropriate paperwork for her children to lawfully enter the United States much earlier than she did. This means that I would have [been] physically present in this country for the time period required for my son's, [Plaintiff], citizenship claim").

For all of the persuasive reasons articulated by the court in *Vasquez*, the Court finds that Plaintiff's "constructive presence" argument fails. *See Vasquez*, 2025 WL 847882, at *3–4. Accordingly, for those reasons and all of the persuasive reasons articulated by the *Quezada* court, the Court finds that Plaintiff is not a citizen of the United States. Therefore, Counts I, II, & III fail to state a plausible claim for relief sufficient to survive Rule 12(b)(6) dismissal and the Court **DISMISSES WITH PREJUDICE** Count I, Count II, and Count III. *See Rangel*, 2023 WL 2170800, at *10 ("Rangel's allegations ultimately hinge on whether he qualified as a U.S. citizen").

### C. Procedural Due Process (Count IV)

Plaintiff also asserts a claim for violation of his procedural due process rights, alleging that "[i]n issuing a decision to deny Plaintiff's N-600 application, Defendant USCIS failed to include language in the denial notice sufficient to apprise Plaintiff that he had the right to seek a judicial declaration of his United States citizenship in federal district court pursuant to 8 U.S.C. § 1503." Doc. No. 27 at 17, ¶ 71. Plaintiff also

alleges that such omission "also means that Plaintiff was unaware that he only had a period of five years from the date of the agency's cancellation notice" to bring his claim for declaratory relief. *Id.*

A person may bring a claim under Section 1503(a) "within five years after the final administrative denial of such a right or privilege[.]" 8 U.S.C. § 1503(a). It appears that Plaintiff bases his procedural due process claim on a limitations issue. However, no such issue exists here. Plaintiff was required to bring his Section 1503(a) claim within five years of the cancellation of his certificate of citizenship in 2021, and he timely did so. *See* Doc. No. 1 (case originally filed in August 2024). Accordingly, Plaintiff states no basis for relief in Count IV because there is no limitations issue present, and, therefore, the Court **DISMISSES AS MOOT** Count IV.

### D. Leave to Amend

In his Response, Plaintiff requests leave to amend "to the extent the Court finds any pleading deficiency." Doc. No. 32 at 24. However, leave to amend would be futile, as the Court lacks subject-matter jurisdiction over Counts II and III and Plaintiff is not a U.S. citizen, neither of which an amended complaint will change. *See Ridgle v. Lowe's Home Ctrs., Inc.*, Civ. Action No. 3:04-CV-1650-D, 2005 WL 8158192, at *2 (N.D. Tex. Mar. 17, 2005) (Ramirez, M.J.) ("[a] court may deny a motion to amend if the proposed amendment would be futile"). Accordingly, the Court **DENIES** Plaintiff's request for leave to amend.

## IV. Conclusion

For the foregoing reasons, the Court finds (1) that it lacks subject-matter jurisdiction over Counts II and III, (2) that Plaintiff fails to state a claim for relief in Counts I, II, & III because he is not a United States citizen, and (3) that Count IV is moot because no limitations issue exists in this case. Accordingly, the Court **GRANTS** the Motion, **DISMISSES WITH PREJUDICE** Count I, Count II, and Count III of the Amended Complaint, and **DISMISSES AS MOOT** Count IV of the Amended Complaint. Further, the Court **DENIES** Plaintiff's request for leave to amend.

**SO ORDERED.**

Signed August 19th, 2026.

Ed Kinkeade

ED KINKEADE
UNITED STATES DISTRICT JUDGE